THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DENNIS DICKENS, Defendant-Appellant.

(No. 73-236; ▮▮▮▮▮▮▮▮▮▮▮▮

Fifth District—May 21, 1974.

G. Edward Moorman, of Smith, Allen & Moorman, of East Alton, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (P. J. O'Neill, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from a judgment entered, on a jury verdict, by the circuit court of Madison County against the defendant, Dennis Dickens, for armed robbery and the imposition of a sentence of 4 to 6 years in the penitentiary.

The defendant contends, first, that he was not proven guilty beyond a reasonable doubt because he did not commit an overt act in furtherance of the armed robbery and because he was not accountable for the actions of the co-defendants; secondly, that he is entitled to a new trial because he was denied effective assistance of counsel at the trial due to a conflict of interest on the part of his court-appointed Public Defender; thirdly, that he is entitled to a new trial because of the court's failure to give his tendered instruction no. 1; and lastly, that his sentence is excessive in view of co-defendants' sentences of periodic imprisonment consisting of 2 years of weekends in the county jail.

In support of his first contention, that he was not proven guilty beyond a reasonable doubt, defendant cites *People v. Tillman*, 130 Ill.App.2d 743, 265 N.E.2d 904; *In re Interests of Dugan*, 9 Ill.App.3d 58, 291 N.E.2d 303; and *People v. Ramirez*, 93 Ill.App.2d 404, 236 N.E.2d 284. In *People v. Tillman*, the court, with Justice Trapp dissenting, stated that the evidence failed to show any intent of the defendants to engage in criminal activity with the perpetrators of the crime; established that the defendants were not with the perpetrators when the crimes were committed; and, tended to show that, prior to the commission of the crimes for which the defendants were charged, the defendants had refused to join or assist in the robbery of a filling station. In the case of *In re Interests of Dugan*, a juvenile delinquency proceeding, the court stated that the "most" the evidence established was that Dugan was aware that a crime was being committed and was in the vicinity when the crime was being committed. In *People v. Ramirez*, the court found that the State had failed to estab-

lish beyond a reasonable doubt that the conduct on the part of Ramirez took place either before or during the commission of the murder, that Ramirez shared the criminal intent of the principal, or that there was a community of unlawful purpose. Facts similar to *Tillman, Dugan* and *Ramirez* are not present in the instant case. The record in the instant case discloses evidence which indicates that the defendant, Dennis Dickens, may have actively participated in the robbery. For example, Mrs. Hampton, one of the victims, testified that all seven persons, including the defendant, went into, and through, the Hampton's house. The instant case is further distinguished by the fact that there is no evidence in the record that the defendant severed his connections with the group or that he was not in the immediate vicinity of the crimes at the time of their commission. These and other distinctions herein present render the aforementioned cases, relied upon by the defendant, inapplicable to this case.

It is well established that mere presence at the scene of a crime is not sufficient to constitute a person a principal of a crime. (*People v. Nugara,* 39 Ill.2d 482, 236 N.E.2d 693; *People v. Woodell,* 1 Ill.App.3d 257, 274 N.E.2d 105.) It is equally established, however, that one may aid and abet without actively participating in an overt act. (*People v. Nugara,* 39 Ill.2d 482, 236 N.E.2d 693; *People v. Murphy,* 17 Ill.App.3d 482, 308 N.E.2d 235; *People v. Littleton,* 113 Ill.App.2d 185, 252 N.E.2d 77.) Evidence that tends to establish that a person was present during the commission of a crime without disapproving or opposing it may be considered by the trier of fact, with other circumstances, in reaching its conclusion that such person assented to the commission of the crime, lent it his countenance and approval and thereby aided and abetted the commission of the crime. (*People v. Washington,* 26 Ill.2d 207, 186 N.E.2d 259.) When a group shares a "common design" to do an unlawful act and all assent, whatever is done in furtherance of that design is considered the act of all of them. *People v. Hairston,* 46 Ill.2d 348, 263 N.E.2d 840; *People v. Cole,* 30 Ill.2d 375, 196 N.E.2d 691.

In *People v. Johnson,* 35 Ill.2d 624, 221 N.E.2d 622, the supreme court upheld a murder conviction and stated:

> "Evidence that one voluntarily attaches himself to a group bent on illegal acts with knowledge of its design supports an inference that he shared the common purpose and will sustain a conviction as a principal for a crime committed by another in furtherance of the venture. (People v. Rybka, 16 Ill.2d 394, 405, 138 N.E.2d 17.) Proof of a common design need not be supported by words of agreement but can be drawn from the circumstances surrounding the commission of an act by a group. * * *" (35 Ill.2d at 626, 221 N.E.2d at 663.)

In the instant case there is sufficient evidence for the jury to determine that the defendant had voluntarily attached himself to a group bent on illegal acts. The testimony of the victims, Mr. and Mrs. Hampton, indicates that the group's original purpose was to obtain "downers" by threatening the use of force.

The defendant relies on several statements made by Mr. and Mrs. Hampton as proof that the defendant did not share a "common design" with the group and that he did not intend to rob the Hamptons. However, these statements do not reveal any substantial opposition by the defendant to the acts of the group. In fact all but one vague and general statement made by Mrs. Hampton indicate that the defendant's renitency to the group's activities manifested itself only after the house had been ransacked.

There is ample evidence in the record to sustain a finding that the defendant shared a "common design" with his companions or that he assisted in the armed robberies. The testimony indicates that the defendant voluntarily entered the Hampton house with the other members of the group. His silence throughout the evening could logically be considered an aid to his companions. Furthermore, he made no attempt to assist the victims, to notify the authorities or to flee the scene until the group had completed their criminal activities. Although there is some evidence from which it might be inferred that the defendant thought things had "gone too far", he did not abandon, or withdraw from, or present any substantial opposition to, his companions. The defendant left the Hampton home with his alleged accomplices, and he was apprehended with them soon thereafter. In view of this evidence, it was reasonable for the jury to find that the defendant aided and abetted the criminal act of armed robbery, and that finding will therefore not be disturbed by this court.

In defendant's second contention, that he was denied the effective assistance of counsel because the Public Defender was forced to represent both the defendant and co-defendant, Prince, he cites as authority *People v. Johnson*, 46 Ill.2d 266, 265 N.E.2d 869, and *People v. Ware*, 39 Ill.2d 66, 233 N.E.2d 421. In both of these cases one of the co-defendants testified against the defendant. In *Johnson* the supreme court stated that the co-defendant could not receive the "undivided allegiance" of his attorney because immunity was granted to one of the co-defendants and he testified against the defendant at trial. In *Ware*, the court noted that there was "complete antagonism" between the defense of the co-defendants because one had pled guilty and prior to his being sentenced he testified against the defendant. In the instant case, neither the defendant nor the co-

defendant testified and there was no showing that their defenses were completely antagonistic.

■■ It is well settled that co-defendants do not have the right to an appointment of individual attorneys unless there is some showing that the defenses may be inconsistent. (*People v. Robinson,* 42 Ill.2d 371, 247 N.E.2d 898; *People v. Dolgin,* 415 Ill. 434, 114 N.E.2d 389.) As stated in *People v. Chapman,* 66 Ill.App.2d 124, 127, 214 N.E.2d 313, 315:

> "It is only when the interests of the joint defendants are *in fact* antagonistic that the court must grant separate trials or require separate legal representation. *People v. Dolgin,* 415 Ill. 434, 114 N.E.2d 389 (1953). A finding of adverse interest or incompetency or incompatability of counsel cannot be based solely on mere assertions. *People v. Wolff,* 19 Ill.2d 318, 167 N.E.2d 197 (1960). Unless defendant properly establishes that a conflict of interest actually exists, or this fact becomes apparent during the trial itself, the court will not indulge in speculation to determine whether separate counsel, in the interest of justice and a fair trial, is required. *People v. Rose,* 348 Ill. 214, 180 N.E. 791 (1932) and *People v. Bopp,* 279 Ill. 184, 116 N.E. 679 (1917)."

A similar view was espoused by the United States Court of Appeals for the Seventh Circuit; in *United States v. Gallagher,* 437 F.2d 1191 (7th Cir. 1971), *cert. den.* 402 U.S. 1009, 29 L.Ed.2d 430, 91 S.Ct. 2190, the court stated:

> "That a difference in the weight of the evidence against co-defendants may cause trial counsel to speculate as to the trial strategy he should employ in the cross-examination of a witness, likewise, does not of itself serve to establish that counsel is unable to effectively represent both defendants. Nor does the fact that one of the co-defendants expressed a desire to testify, which he promptly withdrew at the first opportunity. The existence of a conflict of interest, to warrant the result here sought, must be founded on something more than mere speculation or surmise." (437 F.2d at 1194.)

(See also *People v. Richardson,* 16 Ill.App.3d 830, 306 N.E.2d 886; and *People v. Robinson,* 17 Ill.App.3d 310, 308 N.E.2d 88.) In the instant case there was no showing of an actual conflict of interest between the defendants and, therefore, we find defendant's claim of ineffective assistance of counsel without merit.

The defendant's third contention is that he is entitled to a new trial because the court refused to give his tendered instruction number one relating to the defense of compulsion. That instruction was at variance with the applicable Illinois Pattern Instruction (I.P.I.), Criminal Instruc-

tion No. 24.21. The State's Attorney objected to the instruction on the ground that there was not sufficient evidence to support the defense of compulsion. The defense attorney did not argue the matter, and the instruction was refused. Our reading of the record reveals no evidence of compulsion.

■■ Assuming *ad arguendo* that there was sufficient evidence by inference to justify an instruction on the defense of compulsion, the court was nevertheless correct in refusing the instruction tendered by the defendant. Only when there is no applicable I.P.I. in a criminal case or when such I.P.I. inaccurately states the law, may a defendant tender an instruction that differs from the Illinois Pattern Instructions in criminal cases. (Ill. Rev. Stat., ch. 110A, sec. 451(a); *People v. Phillips*, 129 Ill.App.2d 455, 263 N.E.2d 353.) In the instant case I.P.I. Criminal No. 24.12 was not tendered, and that instruction does accurately state the law concerning the defense of compulsion. Under such circumstances the trial court was justified in refusing defendant's tendered instruction number one.

■■ The defendant's final contention is that his sentence of 4 to 6 years for the offense of robbery is excessive in light of the fact that two codefendants were sentenced to periodic imprisonment. The defendant cites one case as authority for this point. Such case is not favorable to the defendant and will not be discussed. In *People v. Tobin*, 2 Ill.App.3d 538, 276 N.E.2d 828, this court cited the following language from *People v. Jones*, 118 Ill.App.2d 189, 254 N.E.2d 843, 847:

> " 'We recognize that not every offense in a like category calls for an identical punishment. There may be a proper variation in sentences as between different offenders, depending upon the circumstances of the individual case. As a general rule, where the punishment for the offense is fixed by statute, that imposed in the sentence must conform thereto, and a sentence which conforms to statutory regulations is proper. Before an Appellate Court will interfere, it must be manifest from the record that the sentence is excessive and not justified by any reasonable view which might be taken of the record!" (2 Ill.App.3d at 542, 276 N.E.2d at 831.)

The Illinois Supreme Court and this court have upheld disparate sentences in which an important consideration was the defendant's past criminal record. (*People v. Thompson*, 36 Ill.2d 478, 224 N.E.2d 264; *People v. Tobin*, 2 Ill.App.3d 538, 276 N.E.2d 828.) In the instant case, the presentence report reveals that the defendant: (1) was sentenced to serve 5 years in 1958 for armed robbery in Missouri; (2) was placed on probation in 1965 for obtaining narcotics with a false identification card; and (3) was placed on probation in 1967 for possession of narcotics. The

defendant does not assert that his co-defendants also had criminal records. Without such an assertion we can find nothing improper with the sentence imposed upon the defendant.

For the aforementioned reasons, the judgment of the circuit court of Madison County is affirmed.

Judgment affirmed.

CREBS and CARTER, JJ., concur.