THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LINDA CHARLESTON, Defendant-Appellant.

Fourth District   No. 13793

Opinion filed March 3, 1977.

Richard J. Wilson and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Paul R. Welch, State's Attorney, of Bloomington (Robert C. Perry and James G. Condon, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:

Defendant Linda Charleston was charged by indictment in the Circuit Court of McLean County with two counts of forgery and one count of conspiracy to commit forgery. After a trial by jury, she was convicted of the conspiracy charge and acquitted of the forgery charges. She was then sentenced to probation for a period of 36 months with conditions that she pay a fine of $250 and court costs of $253.80 within a period of about 2 years. She appeals maintaining that the evidence was not sufficient to prove her guilt of conspiracy beyond a reasonable doubt.

The evidence is undisputed that on November 19, 1974, at about 10 a.m. defendant drove Janet Johnson, Betty Hamilton and Gladys Stovall to a building one of the occupants of which was Johnus Stovall, grandfather of Ms. Stovall. As the parties arrived, they noticed that a mailman was delivering public aid checks to the mail boxes of various occupants of the building. Ms. Johnson and Ms. Hamilton both testified that they stole a public aid check from a mail box. Defendant and all of the witnesses except Ms. Hamilton testified that defendant was in the front yard of the building or at the sidewalk when the checks were stolen. Ms. Hamilton testified that defendant was beside her when she stole a check from one of the mail boxes. The women left the scene hurriedly, returning to the car. Defendant then drove them to a bank where the checks were forged, presented to an outside teller and cashed. There was no evidence that defendant received any of the proceeds.

Ms. Hamilton and Ms. Stovall testified that on the morning of November 19, 1974, prior to their going to Johnus Stovall's building the four had discussed stealing some public aid checks. Defendant and Ms. Johnson denied this. Defendant and Ms. Stovall testified that Ms. Stovall had asked defendant to take her to her grandfather's so that she could ask him for a ride to work that night. The evidence is undisputed that while on the porch of the building, Ms. Stovall made this request of her

grandfather. Ms. Hamilton and Ms. Stovall both testified that when the women returned to defendant's car after the checks had been stolen, Ms. Johnson said, "Let's get to the bank and cash it before they find out we got them." Defendant denied this conversation and stated that Ms. Johnson asked that defendant take them to the bank so that she, Johnson, could cash a check of her own.

Section 8—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 8—2(a)), provides in part:

> "A person commits conspiracy when, with intent that an offense be committed, he agrees with another to the commission of that offense. No person may be convicted of conspiracy to commit an offense unless an act in furtherance of such agreement is alleged and proved to have been committed by him or by a co-conspirator."

■■ Defendant's driving of the car to the bank and the forgery and presentation of the checks by the others were acts pursuant to the conspiracy alleged. The jury was not required to believe defendant's explanation that Ms. Hamilton asked her to drive to the bank so that she could cash a check of her own and could believe the testimony of Ms. Hamilton and Ms. Stovall that Ms. Johnson said to get to the bank before the theft of the checks was discovered. If the members of the jury believed Ms. Hamilton and Ms. Stovall they could have determined that, at least by that time, defendant knew that Ms. Johnson and Ms. Hamilton intended to take the stolen checks to a bank and commit an offense of forgery. It is clear that defendant was under no compulsion to drive the women to the bank. The jury could in turn infer from defendant's affirmative act of voluntarily driving the women to the bank, knowing that they intended to commit a forgery there, that defendant intended to aid them in the commission of the forgery. (*In re Johnson* (1976), 40 Ill. App. 3d 493, 352 N.E.2d 257.) No direct evidence was presented, however, of any express agreement between defendant and any of the other women for the commission of the offense. The issue for determination is whether the jury could have determined beyond a reasonable doubt from the circumstantial evidence that such an agreement existed.

Recently, the supreme court ruled in *People v. Bailey* (1975), 60 Ill. 2d 37, 322 N.E.2d 804, that evidence that two leaders of a Chicago street gang both fired at a car driven by the leader of a rival gang and that afterwards one of the two leaders told the rival leader that they would get him next time was insufficient to prove a conspiracy to murder. The opinion emphasized that, as part of a police plot, the rival leader had driven into the territory of defendant's gang and acted in a way to attract their attention and that this indicated that the shooting occurred

spontaneously. When the unlawful actions occurred in this manner, the existence of the gang relationship was not sufficient to establish an agreement to commit the offense. The opinion acknowledged, however, that "the existence of a conspiracy may be inferred from conduct, statements and other circumstances that disclose a common criminal purpose (*People v. Link*, 365 Ill. 266, 282, 6 N.E.2d 201)." (60 Ill. 2d 37, 45, 322 N.E.2d 804, 809.) In *Link*, evidence was introduced that Link, a trustee of the Sanitary District of Chicago, had obtained money of the district for his own purposes, voted to approve various padded payrolls and sponsored persons on the district payroll that did only political work. Although no direct evidence of an agreement to defraud the district was introduced, the circumstantial evidence was ruled to be sufficient to prove Link to be a part of a conspiracy with others who were shown to be engaged in like activity. Proof of individual acts in furtherance of the same criminal objective have also been ruled to be sufficient to justify the inference of an agreement in *People v. Amore* (1938), 369 Ill. 245, 16 N.E.2d 720, and *People v. Brinn* (1965), 32 Ill. 2d 232, 204 N.E.2d 724.

■■ ■ Defendant's driving to the bank was not done with the spontaneity that would accompany a gun shot at an enemy that suddenly appears. Defendant's acts in driving to the bank, if done to aid the forgery, would be acts in furtherance of the same criminal objective as those of Ms. Johnson and Ms. Hamilton and would justify an inference of an agreement between defendant and Ms. Johnson and Ms. Hamilton to aid them in the commission of the forgeries. A person would be very unlikely to voluntarily drive persons from a place where those persons have committed a theft, knowing this has happened, to a place where the driver knows the others intend to forge the instruments stolen without a tacit agreement to do the driving in order to aid the offense. If the jury disbelieved defendant's explanation that Ms. Johnson asked to be driven to the bank to cash a check of her own, they could easily determine that there was no other reasonable hypothesis to explain defendant's driving the women to the bank other than as part of a tacit agreement to aid them in their proposed forgery. The evidence was thus sufficient to prove defendant's guilt beyond a reasonable doubt. *People v. Nathanson* (1945), 389 Ill. 311, 59 N.E.2d 677.

The conviction and sentence are affirmed.

MILLS and REARDON, JJ., concur.